# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**RONALD D. LEONARD,**

      **Petitioner,**               **CASE NO. 2:10-CV-769**
                                   **JUDGE JAMES L. GRAHAM**
      **v.**                    **MAGISTRATE JUDGE ELIZABETH P. DEAVERS**

**WARDEN, TOLEDO**
**CORRECTIONAL INSTITUTION,**

      **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant petition, Respondent's *Return of Writ*, Petitioner's *Reply*, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

The Clerk has already updated the record to reflect Petitioner's current address and named Respondent. Accordingly, Petitioner's request that the docket be updated to reflect his current address and to substitute the named Respondent (Doc. 20) is **DENIED**, as moot.

Petitioner's request for a judgment of default (*see* Petitioner's *Reply*, Doc. 13), is **DENIED**.

Petitioner's motion for a decision and for a substitution of the Respondent (Doc. 21), is **DENIED,** as moot.

## FACTS and PROCEDURAL HISTORY

The Ohio Fourth District Court of Appeals summarized the facts and procedural history of this case as follows:

In September 2005, a wildlife technician discovered some marihuana

plants while mowing a brushy section of the Fox Lake Wildlife Area in Athens County, Ohio. At about the same time, some confidential informants told Officer Terry Hawk of the Ohio Department of Natural Resources (hereinafter "ODNR") about suspicious activity in the area. Based on these reports, Officer Hawk and ODNR Officer Thomas Donnelly drove to that section of the Fox Lake Wildlife Area and found marihuana plants growing in two blue pots and one black pot. The two blue pots each contained two marihuana plants. The black pot also contained two marihuana plants and was located about seventy-five yards away from the two blue pots.

On September 9, 2005, Officers Hawk and Donnelly set up a surveillance camera in the area of the marihuana plants. The surveillance camera was designed to start recording upon sensing any seismic activity in the area. On September 13, 2005, the surveillance camera recorded a white male approaching the marihuana plants while carrying a blue jug. Subsequently, the seismic activity from a nearby gas line caused the surveillance camera to record near continuously. As a result, the surveillance camera quickly ran out of power and recorded nothing else related to the marihuana plants.

On September 20 and 21, 2005, Officers Hawk and Donnelly, along with other ODNR officers, set up live surveillance in the area of the marihuana plants. The officers observed nothing related to the marihuana on September 20, 2005. Before starting surveillance on September 21, 2005, one of the officers checked the marihuana in the blue pots and noticed that the soil was dry.

At approximately 5:22 p.m. on September 21, 2005, Officer Donnelly observed a red jeep driving towards the area of the marihuana plants. The driver of the red jeep parked in a wooded area, got out of his car, and walked towards the area of the marihuana plants; i.e., the brushy area. Officer Hawk and another ODNR officer testified that they saw the suspect, later identified as Leonard, carrying a blue jug.

Leonard then entered the brushy area that hid the blue pots. After Leonard entered this particular area, Officer Hawk testified that he saw the tops of the marihuana plants move and heard the sound of water pouring. (One of the ODNR officers later checked the blue pots and discovered that the soil was wet.) When Leonard emerged from the brushy area, Officer Hawk apprehended Leonard and ordered him

to the ground. At this point, ODNR officers found loose marihuana lying on the ground next to Leonard.

ODNR Investigator Charles Stone took possession of the marihuana evidence a few days later. Investigator Stone testified that, because he had not worked a marihuana cultivation case before, he called the Athens County Prosecutor's office for guidance. Investigator Stone further testified that he operated under the following guidelines: "Keeping the three pots separate and removing the leaves and buds from the stalks of each of the two plants in each of the three planters, and putting them in separate boxes. So we ended up with three boxes. And because our scales were not on site at the District office I was given some advice to take it [sic] the State Highway Patrol office in Athens and utilizing their digital scales to weigh the contents of each of the boxes. That process occurred on [September] 26th." Transcript of Jury Trial Proceedings, Day Two at 221. According to Investigator Stone's testimony, the first box of marihuana plants weighed 426.86 grams; the second box of marihuana plants weighed 1,361.10 grams; and the third box weighed 1,079.29 grams. Therefore, according to Investigator Stone's testimony, the total weight of the marihuana was 2,867.25 grams.

On February 27, 2006, an Athens County Grand Jury indicted Leonard for one count of third-degree felony cultivation of marihuana, in violation of R.C. 2925.04(A) and R.C. 2925.04(C)(5)(d).

Sometime after Investigator Stone weighed the marihuana, ODNR officers transferred the marihuana evidence to the Ohio Attorney General's Bureau of Criminal Identification and Investigation (hereinafter "Ohio BCI" or "BCI"). A BCI analyst weighed the marihuana plants on May 16, 2007. According to the analyst's report, the marihuana weighed 747.1 grams. (Investigator Stone weighed the marihuana evidence again on August 28, 2007. The weight obtained by Investigator Stone that day was consistent with the weight obtained by the BCI analyst.)

During his arrest on September 21, 2005, Leonard stated that he took the loose marihuana for his own use and, also, that he was growing the marihuana for his own use. On July 27, 2007, Leonard filed a motion to suppress that statement. Leonard also filed a motion in

limine to prohibit the state from introducing into evidence (1) any marihuana seized subsequent to Leonard's arrest and (2) the September 13, 2005 surveillance videotape. After a suppression hearing that addressed these issues, the trial court granted the motion to suppress the statement because Leonard had not been read his Miranda rights. However, the trial court denied Leonard's motion in limine.

On February 4, 2008, Leonard filed a Motion for Disclosure of the Identity of the Informant. The trial court denied that motion. Leonard subsequently filed another motion requesting the confidential informant's identity. Again, the trial court denied that motion. On July 7, 2008, the state filed a Notice of Citizen Information. In that Notice, the prosecutor stated that "[g]iven the fact that Supervisor Donnelly was watching for a certain vehicle, it became apparent to me that there was another individual who had provided information to the officers. This individual was not present on September 21, 2005, this individual is a not a suspect in the case, and this individual had no other relationship to this case."

On July 8, 2008, before the voir dire process in Leonard's trial, the judge ruled that the prosecutor should provide the name of the confidential informant to Leonard's attorney. The trial court judge said that the prosecutor "did not say that the individual that he's told us about and filed a notice about was a confidential informant. He just said it was somebody that they saw there who gave some general information when asked. And I think to allay any suspicions or anything the name and the address of that person should be given. It doesn't have to be published. Just something so counsel can call this person and talk to this person." Transcript of Jury Trial Proceedings, Day One (Pre-Voir Dire) at 5.

The prosecutor provided the name of the informant to Leonard's trial counsel. But instead of providing an address or phone number, the prosecutor merely provided a street name. When Leonard's trial counsel complained, the trial court offered to help him make contact with the informant. However, it appears that nobody was able to contact the informant before the end of Leonard's trial.

During the three-day jury trial, the prosecution called Officer Hawk, Officer Donnelly, Investigator Stone, and two other ODNR officers as witnesses. Leonard called the BCI analyst as a witness. After the

trial, the jury found Leonard guilty of cultivation of marihuana, a felony of the third degree.

On July 23, 2008, Leonard filed a motion for a new trial pursuant to Crim.R. 33. However, the trial court disregarded Leonard's arguments under Crim.R. 33(A)(2) and (3) because his motion did not include the necessary supporting affidavits. See Crim.R. 33(C). Further, the trial court found that Leonard's arguments under Crim.R. 33(A)(1) were without merit. As a result, the trial court denied Leonard's motion for a new trial.

*State v. Leonard*, No. 08CA24, 2009 WL 4050254, at *1-4 (Ohio App. 4th Dist. Nov. 18, 2009).

Petitioner filed a timely appeal in which he raised the following assignments of error:

I.    THE CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II.   APPELLANT WAS DENIED A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.

III.  APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL.

*Id.* at *4.  On November 18, 2009, the appellate court affirmed the judgment of the trial court.  *Id.*

On March 10, 2010, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *State v. Leonard,* 124 Ohio St.3d 1509 (2010).

On September 8, 2010, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He asserts that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

1.      Hearsay implicates the Sixth Amend. Because, defendant was not afforded the opportunity to confront the out-of-court declarant, the admission of a hearsay statement was made by someone other than at a prior judicial proceeding.

         The State failed to timely disclose the identity of the confidential informant at trial depriving Defendant-Petitioner his constitutional right to Confrontation Clause for cross-exam of witness; compulsory process, and a fair trial and had they done so, the evidence of "suspicious activity" hearsay pursuant to Fed. Evid. R. 801(c) offered for the truth of the matter asserted, by ODNR officer Terry Hawk, could have been utilized to put the case in a different light, undermining confidence in the outcome and verdict.

2.      Effective 1-9-93 the USSG amending sentencing guidelines provided that a controlled substance does not include materials that must be separated from the substance before it can be used, USSG App. Amend. 484 (codified as USSG Sec. 2D1.1, Comment (N.1). Again, [illegible] the commission established Amend 518 – courts should approximate dry weight of marijuana that is wet to consume.

         A criminal defendant is denied due process of law when he is convicted for the 3rd degree felony offense of cultivation in a weight when equal to or exceeding 1,000 grams, when the State's proof of the weight includes the weight of moisture accumulated on the surface of marijuana plants following a watering when the plants hydrated for (5) days in buckets after the watering. Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Section 16, Article I of the Ohio Constitution.

3.      Trial counsel's performance was deficient as counsel was not functioning as he guarantees Defendant under the Sixth Amend. failing to file proper effective motions to exclude wet marijuana evidence prior to trial, prejudicial to Defendant.

A criminal defendant is denied the effective assistance of counsel when trial counsel fails to recognize inadmissible evidence and fails to file effective motions that would curtail the State's use of the inadmissible evidence, in violation of his Sixth and Fourteenth Amends. to the United States Constitution and Section 10, Article I of the Ohio Constitution.

4.      Appellant-Petitioner was denied a fair trial due to the ineffective assistance of counsel. Counsel's performance was deficient, making errors so serious that counsel was not functioning as guaranteed by the 6th Amend., which prejudiced the Defendant.

Petitioner-Appellant was denied a fair trial due to the ineffective assistance of counsel, because his motion for a new trial did not include the necessary supporting affidavits, pursuant to Ohio Crim. R. 33(C). The Athens Count, Ohio App. 4th Dist., agreed trial counsel Javier Armengaur (Columbus) erred by failing to follow the Rules of Criminal Procedure, violating the 6th Amendment.

It is the position of the Respondent that claims one, two and four are procedurally defaulted and alternatively, that all of Petitioner's claims are without merit.

## REQUEST FOR JUDGMENT OF DEFAULT

Preliminarily, Petitioner again requests a judgment of default against Respondent, alleging Respondent failed to timely file a response to the Petition, as directed to do so by this Court. As indicated in this Court's prior Order denying Petitioner's objection to the Magistrate Judge's September 28, 2010, Order granting Respondent's request for an extension of time to file the Return of Writ, Respondent's request, and the granting of such request, were proper. Moreover, "the Sixth Circuit Court of Appeals has held that, based upon the express language of this habeas corpus

provision, a federal court may not grant habeas corpus relief by entering a default judgment." *Frigo v. Marberry*, No. 04-74970, 2005 WL 1028174, at *2 (E.D. Mich. April 20, 2005)(citing *Allen v. Perini*, 26 Ohio Misc. 149, 424 F.2d 134, 138 (6th Cir. 1970); *Ruiz v. Cady,* 660 F.2d 337, 340 (7th Cir. 1981) (holding that, in habeas corpus cases, the remedy of entering a default judgment as a sanction for respondent's failure to respond to petition may be an appropriate remedy where the respondent is guilty of extreme and inadequately explained delays); (other citations omitted).

Therefore, Petitioner's request for a default judgment is **DENIED.**

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Coleman v. Thompson,* 501 U.S. 722, 731 (1991); *Deitz v. Money,* 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 724; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-

part analysis of *Maupin*). Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Maupin,* 785 F.2d at 138 (internal quotations omitted). Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) a substantial reason to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id.* "Cause" under this test "must be something *external* to the petitioner, something that cannot fairly be attributed to him[;] . . . some factor external to the defense [that] impeded [] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level or failure to appeal at all. *Id* at 750.

Nevertheless, "'[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isacc,* 456 U.S. 107, 135 (1892)). Petitioners who fail to show cause and prejudice for procedural default may nonetheless receive a review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle,* 261 F.3d 594, 601–02 (6th Cir. 2001) (same). The fundamental miscarriage of justice exception requires

a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

In claim one, Petitioner asserts he was denied his right to confront the witnesses, in view of the untimely disclosure of the identity of the State's confidential informant and admission of improper hearsay evidence by prosecution witness Officer Hawk. These claims, being readily apparent from the face of the record, should have been raised on direct appeal, but were not.[1] Moreover, Petitioner failed to raise any issue regarding the State's failure to timely disclose the identity of the confidential informant on appeal to the Ohio Supreme Court. *See Exhibit 29 to*

---

[1] Petitioner did raise a claim of prosecutorial misconduct based on the State's failure to timely disclose the identity of the confidential informant. The state appellate court rejected this claim, however, as follows:

> Leonard also contends that the prosecutor engaged in misconduct by failing to reveal the identity of the confidential informant. Even though the trial court ordered a limited disclosure of the informant's identity just before trial, Leonard has not demonstrated that the prosecutor was required to reveal the identity of the confidential informant at any time. "Courts have held consistently that where the informant was not an active participant in the criminal activity, but only a tipster, disclosure is not required[.]" *State v. Parsons* (1989), 64 Ohio App.3d 63, 67-68, 580 N.E.2d 800. See, also, *State v. Bays,* 87 Ohio St.3d 15, 25, 716 N.E.2d 1126, 1999-Ohio-216. Here, there is no evidence that the confidential informant was an active participant in the cultivation of marihuana.
>
> "Additionally, it is clear that the burden rests with defendant to establish the need for disclosure. * * * Something more than speculation about the possible usefulness of an informant's testimony is required. The mere possibility that the informer might somehow be of some assistance in preparing the case is not sufficient to satisfy the test that the testimony of the informant would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." *Parsons* at 69, 580 N.E.2d 800 (citations omitted). Here, Leonard freely admits that "whether the defendant would have benefited from the information sought [the identity of the confidential informant] cannot be demonstrated." Brief of Appellant at 18.
>
> For the foregoing reasons, we cannot find misconduct based on the prosecutor's failure to reveal the identity of the confidential informant.

*State v. Leonard*, 2009 WL 4050254, at *8-9.

*Return of Writ.* Further, Petitioner may now no longer raise these claims in the Ohio courts, under Ohio's doctrine of *res judicata. See State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

In claim four, Petitioner asserts he was denied effective assistance of counsel because his attorney improperly failed to include, in the motion for a new trial, affidavits in support of the motion, in violation of Ohio law. Petitioner raised this same claim on direct appeal; however, he failed to include this claim in his appeal to the Ohio Supreme Court. *See Exhibit 29 to Return of Writ.*[2] Again, Petitioner may now no longer present this claim to the Ohio Supreme Court under Ohio's doctrine of *res judicata. See State v. Cole; State v. Ishmail*; *State v. Perry*.

The Court finds that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson,* 501 U.S. 722, 732-33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia,* 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky,* 466 U.S. 341, 348-351 (1984)); *see also Barr v. City of Columbia,* 378 U.S. 146, 149 (1964); *NAACP v. Alabama*

---

[2] Petitioner asserted, in his appeal to the Ohio Supreme Court, that he was denied the effective assistance of counsel because his attorney failed to file a motion to prevent Officer Stone from testifying regarding the weight of the marijuana, arguing that Stone was not qualified as an expert as required under Ohio law for admission of such evidence. *See Exhibit 29 to Return of Writ.*

*ex rel. Flowers,* 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir.2006); *Coleman v. Mitchell,* 268 F.3d 417, 427-29 (6th Cir.2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir.2000); *Byrd v. Collins,* 209 F.3d 486, 521-22 (6th Cir.2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir.1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata,* to review the merits of claims because they are procedurally barred. *See State v. Cole,* 2 Ohio St.3d at 112; *State v. Ishmail,* 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Respondent contends that Petitioner also has waived claim two for federal habeas review. In claim two, Petitioner asserts he was denied due process because he was convicted of a third degree felony offense of cultivation of 1,000 or more grams of marijuana when the evidence established only proof of the fifth degree felony offense, since evidence of the weight of the marijuana improperly included the moisture of the plant (instead of the dry weight of the plant) in violation of standards set forth in the United States Sentencing Guidelines. This Court agrees that Petitioner never raised on direct appeal any argument regarding non-compliance with standards set forth in the United States Sentencing Guidelines. This claim, therefore, is procedurally defaulted.

The record reflects, however, that Petitioner also argued the evidence was constitutionally insufficient to sustain his conviction on the third degree felony for cultivation of marijuana, because on May 16, 2007, more than one year and seven months after the date of his arrest, the marijuana weighed 747.1 grams, but on September 26, 2005, shortly after the date of his September 21, 2005, arrest, the marijuana weighed 2,867.25 grams. Thus, Petitioner argued, the evidence at most established his guilt on the lesser weight, *i.e.* of only a fifth degree felony offense.[3] Liberally

_____

[3] Petitioner also argued on direct appeal that the officer who testified regarding the marijuana's weight was not properly qualified to do so under Ohio law. This claim is not raised in these proceedings. The state appellate court rejected the claim, however, as follows:

> Leonard argues that Investigator Stone was not qualified to weigh the marihuana plants and, as a result, the evidence did not support a conviction for third-degree felony marihuana cultivation. Leonard bases his argument on R.C. 2925.51, which provides: "In any criminal prosecution for a violation of this chapter or Chapter 3719. of the Revised Code, a laboratory report from the bureau of criminal identification and investigation, a laboratory operated by another law enforcement agency, or a laboratory established by or under the authority of an institution of higher education that has its main campus in this state and that is accredited by the association of American universities or the north central association of colleges and secondary schools, primarily for the purpose of providing scientific services to law enforcement agencies and signed by the person performing the analysis, stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages, is prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance." Leonard contends that Investigator Stone was incompetent to testify as to the weight of the marihuana plants because Investigator Stone did not meet the requirements of R.C. 2925.51.

> However, we believe that Leonard has misinterpreted R.C. 2925.51. We agree with the state's argument. Namely, we do not believe that R.C. 2925.51 establishes standards that a witness must meet in order to competently testify about the weight of marihuana plants. Rather, R.C. 2925.51 merely establishes how a laboratory report may serve as prima facie evidence of the content, weight, and identity of a controlled substance. Here, the state did not attempt to introduce a report from Investigator Stone as prima facie evidence of the weight of the marihuana. Instead, the state called Investigator Stone as a witness to testify about the weight of the marihuana and his methods for obtaining that weight. Therefore, the requirements of R.C. 2925.51 do not apply to the present case.

*State v. Leonard*, 2009 WL 4050254, at *6.

construing Petitioner's pleadings, as this Court is required to do, *see Haines v. Kerner*, 404 U.S. 519 (1972), the Court will consider this same claim here.

Thus, this Court concludes that Petitioner has waived claims one and four for federal habeas review. He may still obtain review of these claims on the merits if he establishes cause for his procedural defaults, as well as actual prejudice from the alleged constitutional violations. As cause for his failure to raise his claims in the Ohio Supreme Court, Petitioner asserts that he is an incarcerated indigent prisoner, and attempted to file an appeal to the Ohio Supreme Court including the claims now raised in these proceedings, but his filing was returned to him for failure to include the entire copy of the appellate court's decision, and his appellate counsel failed to do so. *See Petitioner's Reply, Exhibits to Reply*. Petitioner additionally contends that he was unable to raise a Confrontation Clause claim involving the confidential informant, in view of the prosecutor's failure to timely disclose the information to the defense. *See id.*

These arguments are not persuasive.

> " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule."
> *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003). Petitioner's *pro se* status or "ignorance of the law and procedural requirements for filing a[n]. . . appeal is insufficient to establish cause to excuse his procedural default." *See Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004), citing *Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir. 1995).

It is true that the constitutionally ineffective assistance of counsel may constitute cause for a procedural default. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000)(citing *Murray v. Carrier*,

477 U.S. 478, 488-89 (1986)). However, the ineffective assistance of counsel cannot constitute cause where, as here, there was no constitutional right to effective counsel in the proceeding in question. There is no constitutional right to counsel on a direct appeal to the Ohio Supreme Court. *See Gulertekin v. Tinnelman-Cooper,* 340 F.3d 415, 425 (6th Cir. 2003)(citing *Coleman v. Thompson,* 501 U.S. 722, 752-53 (1991); *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987) ("[T]he right to counsel extends to the first appeal of right, and no further."); *Lopez v. Wilson,* 426 F.3d 339, 352 (6th Cir. 2005)). Thus, any failure by petitioner's appellate counsel to include claims not raised in Petitioner's appeal to the Ohio Supreme Court does not constitute cause for petitioner's procedural defaults.  In any event, Petitioner failed to raise his Confrontation Clause claim on direct appeal. The Ohio Supreme Court does not ordinarily consider claims not raised in the appellate court below. *See State v. Williams*, 51 Ohio St.2d 112, 117-118 (1977) ("It is an established rule of long standing in this state that a criminal constitutional question cannot be raised in the Supreme Court unless it is presented and urged in the court below."); *see also State v. Phillips*, 27 Ohio St.2d 294, 302 (1971) ("the Supreme Court will not consider or determine claimed errors which were not raised and preserved in the Court of Appeals").  Further, and contrary to Petitioner's allegation here, he knew of the State's allegedly untimely failure to disclose information regarding the confidential informant at the time of trial and cannot, therefore, reasonably contend that his failure to discover the factual basis for this claim constitutes cause for this default.  In short, Petitioner has failed to establish cause or actual prejudice from the alleged constitutional violations.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one

who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992). After review of the record, the Court does not deem this to be such a case.

Claims one and four are procedurally defaulted.

## CLAIM TWO

In claim two, Petitioner asserts he was denied due process because he was convicted based on the weight of wet marijuana, rather than the weight of dry marijuana. The state appellate court rejected this argument, reasoning as follows:

> [W]e will address the discrepancy in the weight of the marihuana plants. The BCI analyst testified that she weighed the marihuana plants on May 16, 2007. According to her report (which meets the requirements of R.C. 2925.51), the marihuana weighed 747.1 grams. Because of this, Leonard argues that the evidence supports only a conviction for fifth-degree marihuana cultivation pursuant to R.C. 2925.04(C)(5)(c), which provides: "If the amount of marihuana involved equals or exceeds two hundred grams but is less than one thousand grams, illegal cultivation of marihuana is a felony of the fifth degree[.]"

> Here, we do not believe that the jury created a manifest miscarriage of justice by convicting Leonard under R.C. 2925.04(C)(5)(d) (a third-degree felony) instead of R.C. 2925.04(C)(5)(c) (a fifth-degree felony). Leonard had the opportunity to cross-examine Investigator Stone about his methods for weighing the marihuana and his experience with marihuana plants. Therefore, the jury was in the best position to determine whether the weight obtained by Investigator Stone was credible. Further, we note that other Ohio courts have agreed with the conclusion that drugs "can be weighed as received and ha[ve] upheld convictions of higher degrees in cases where later testing of [the drugs] showed a lower weight." *State v. Jones*, Mahoning App. No. 06 MA 17, 2007-Ohio-7200, at ¶ 25, citing *State v. Burrell,* Cuyahoga App. No. 86702, 2006-Ohio-2593, at ¶ 3. See, also, *State v. Kuntz* (Oct. 2, 2001), Ross. App. No. 01 CA2604, 2001-Ohio2591; *State v. Hunter* (Aug. 19, 1999), Licking App. No. 99CA0036. And although Investigator Stone obtained a lower weight when he weighed the marihuana a second time, he agreed that the marihuana had "dried up quite a bit" from September 26, 2005 through August 28, 2007.

We believe that our decision in *Kuntz* is relevant to the present case. In *Kuntz*, the defendant's marihuana weighed over 200 grams at the time of the offense. However, the marihuana weighed less than 200 grams on the day of the defendant's trial. . . . [T]his court upheld the defendant's conviction for possession of marijuana weighing over two hundred grams but less than one thousand grams. A police officer testified that, over time, marihuana loses weight because of dehydration. And this court found that testimony to be an "alternate explanation to the theory that the scale [was] inaccurate or unreliable." *Kuntz.* Implicit in that finding is our belief that law enforcement officials need not let marihuana "dry out" before weighing it. See, also, *Jones* at ¶ 29 ("Although the crack cocaine in count four may not have been as dry as it will be in the future * * * the lab need not allow the crack to dry at all."). As a result, we cannot conclude that the jury clearly lost its way in resolving the conflict in the evidence between a weight of 2,867.25 grams (a third-degree felony) and a weight of 747.1 grams (a fifth-degree felony).

After reviewing the record, we find substantial evidence upon which the jury could have reasonably concluded that all the elements of third-degree felony cultivation of marihuana were proven beyond a reasonable doubt. Therefore, we cannot find that the jury, as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that Leonard's conviction must be reversed.

*State v. Leonard*, 2009 WL 4050254, at *6-7.

Under 28 U.S.C. § 2254(e)(1), the state court's factual findings are presumed to be correct:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, the state court's decision is binding on this Court unless that decision is contrary to or

involves an unreasonable application of clearly established federal law as determined by the United

States Supreme Court:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court has explained:

> "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*, at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." *Id.*, at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) ( per curiam ).

*Renico v. Lett*, – U.S. –, 130 S.Ct. 1855,1862 (2010)(footnote omitted.)

> "[C]learly established" law under § 2254(d)(1) consists of "the holdings, as opposed to the dicta, of this Court's" cases. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" of that law involves not just an erroneous or incorrect decision, but an objectively unreasonable one. *Renico v. Lett*, 559 U.S. ----, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010).

*Wong v. Smith*, 131 S.Ct.10 (Mem), 2010 WL 752363, at *2 (Nov. 1, 2010). Petitioner has failed

to meet this standard here.

To the extent that Petitioner raises a claim that his conviction was against the manifest weight of the evidence, this claim fails to present an issue appropriate for federal habeas corpus review. The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir.1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U .S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. *Jackson,* 443 U.S. at 319; *Walker*, 703 F.2d at 969.

A criminal defendant may be convicted consistent with the United States Constitution only if the record contains sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. ta 319. To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West,* 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319.) The prosecution is not affirmatively required to "rule out every hypothesis except that of guilty." *Id.* (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume-even if it does not appear on the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson,* at 326).

Additionally, the state appellate court's decision is entitled to a "double layer" of deference upon review in these proceedings. As explained in *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009), deference is due to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia,* is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Further, even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *See also White v. Steele,* 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas corpus petitioner to overcome. Petitioner has not done so here.

The state courts concluded that weight of the wet marijuana was properly considered in determining whether Petitioner was guilty of the third degree felony charge. This Court must defer to a state court's interpretation of its own laws. *See Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)(citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)(a "federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure"). Thus, Petitioner's claim that his conviction violated due process or that there was constitutionally insufficient evidence to sustain his conviction lacks merit.

Claim two is without merit.

## CLAIM THREE

In claim three, Petitioner asserts he was denied effective assistance of counsel because his attorney failed to file a pre-trial motion to prevent admission of the weight of wet marijuana. The state appellate court rejected this claim, reasoning as follows:

Leonard contends that he received ineffective assistance of counsel[.] " 'In Ohio, a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness.' "*State v. Countryman,* Washington App. No. 08CA12, 2008-Ohio-6700, at ¶ 20, quoting *State v. Wright,* Washington App. No. 00CA39, 2001-Ohio-2473; *State v. Hamblin* (1988), 37 Ohio St.3d 153, 155-56, 524 N.E.2d 476, cert. den. *Hamblin v. Ohio* (1988) 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550. To secure reversal for the ineffective assistance of counsel, one must show two things: (1) "that counsel's performance was deficient* * * " which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) "that the deficient performance prejudiced the defense* * *[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, also, *Countryman* at ¶ 20. "Failure to satisfy either prong is fatal as the accused's burden requires proof of both elements." *State v. Hall,* Adams App. No. 07CA837, 2007-Ohio-6091, at ¶ 11, citing *State v. Drummond,* 111 Ohio St.3d 14, 854 N.E.2d 1038, 2006-Ohio-5084, at ¶ 205.

. . . Leonard claims ineffective assistance of counsel based on the motion to exclude the marihuana evidence. Leonard contends that his trial counsel "should have sought to exclude the evidence of weight offered by [Investigator Stone] on the grounds that he did not qualify as an analyst under [R.C.] 2925.51 and he would not otherwise qualify as an expert under Evidence Rule 702." Brief of Appellant at 20-21. We have already found that Leonard has misinterpreted R.C. 2925.51. The qualifications mentioned in R.C. 2925.51 do not apply to the present case because the state did not attempt to introduce a report from Investigator Stone as prima facie evidence of the weight of the marihuana. Therefore, we cannot find ineffective assistance of counsel for reasons related to R.C. 2925.51.

Similarly, we cannot find ineffective assistance of counsel for reasons related to Evid.R. 702. In relevant part, Evid.R. 702 provides: "A witness may testify as an expert if * * * the witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons[.]" Here, we do not believe that Investigator Stone's testimony was beyond the knowledge or experience of the average lay person. Although most people have probably never weighed a marihuana plant, the average person (1) understands the concept of

weight and (2) has weighed something during their lives. Additionally, the Supreme Court of Ohio has "determined that the state has no burden to separate any portion of the marijuana plant when determining weight for purposes of statutory drug offenses." *State v. Davis* (1985), 16 Ohio St.3d 34, 34, 476 N.E.2d 655, citing *State v. Wolpe* (1984), 11 Ohio St.3d 50, 52, 463 N.E.2d 384. Therefore, a person need not have specialized knowledge of marihuana to weigh a marihuana plant; e.g., differentiating between stalks, leaves, and buds. Rather, weighing a marihuana plant requires nothing more than (1) placing the plant on an accurate scale and (2) recording the correct weight. Such an act is within the experience of the average lay person.

We do not believe that weighing marihuana plants requires any "specialized knowledge, skill, experience, training, or education [.]" Evid.R. 702(B). And any motion to exclude Investigator Stone's testimony based on Evid.R. 702 would have been meritless. "Defense counsel's failure to raise meritless issues does not constitute ineffective assistance of counsel." *State v. Ross*, Ross. App. No. 04CA2780, 2005-Ohio-1888, at ¶ 9. *See, also, State v. Close*, Washington App. No. 03CA30, 2004-Ohio-1764, at ¶ 34.

\*\*\*

Accordingly, for the foregoing reasons, we overrule Leonard's . . . assignment of error.

*State v. Leonard,* 2009 WL 4050254, at \*10-12. Again, the factual findings of the state court are presumed to be correct. Additionally, this Court may not grant relief unless the state appellate court's decision was contrary to or an unreasonable application of federal law, or resulted in an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d), (e). Such are not the circumstances here.

In *Strickland v. Washington*, the Supreme Court reiterated that the right to counsel guaranteed by the Sixth Amendment is the "right to effective assistance of counsel." 466 U.S. 668, 686 (1984.) To prevail on a complaint of ineffective assistance of counsel, a petitioner must demonstrate the following:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must
> show that deficient performance prejudiced the defense. This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky,* 130 S.Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. Both standards created by *Strickland* and § 2254(d) are "highly deferential." *Strickland*, 466 U.S. at 689. When *Strickland* and § 2254(d) "apply in tandem," review is "doubly" deferential. *Knowles v. Mirzayance*, 129 S.Ct., 1411, 1420 (2009).

Given the difficulties "inherent" the analysis of whether an attorney's performance was constitutionally deficient,"a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland,* 466 U.S. at 687. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 692.

A petitioner, therefore, must show prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id.* at 693. To do so, a petitioner must demonstrate that a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that Petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

The state appellate court has concluded that evidence regarding the weight of the marijuana was properly admitted at trial. Again, this Court defers to a state court's interpretation of its own laws. *See Adams v. Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. Aug. 28, 2003)(citing *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975); *Israfil v. Russell,* 276 F.3d 768, 771 (6th Cir. 2001)). Petitioner therefore has failed to establish the constitutionally ineffective assistance of counsel on this basis.

Claim three is without merit.

**WHEREUPON,** The Magistrate Judge **RECOMMENDS** that Petitioner's claims be **DISMISSED.**

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

_S/ Elizabeth A. Preston Deavers_
Elizabeth A. Preston Deavers
United States Magistrate Judge